Citation Nr: 1532796 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 11-27 559 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUE

Entitlement to service connection for a skin disorder.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

T. Stephen Eckerman, Counsel


INTRODUCTION

The Veteran served on active duty from September 1950 to September 1952. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Baltimore, Maryland. 

In August 2013, August 2014, and December 2014, the Board remanded the claim for additional development. 

In July 2012, the Veteran testified before a Decision Review Officer (DRO) at the RO. A transcript of the hearing is associated with the claims file. The Board notes that the Veteran had also requested a hearing before a Veterans Law Judge sitting in Washington, D.C. As such, he was notified at his address of record in a May 2013 letter that his requested hearing had been scheduled for July 2013. However, the Veteran failed to appear for his scheduled hearing. As he failed to appear for his hearing without good cause, the Veteran's request for a Board hearing is considered withdrawn. 38 C.F.R. § 20.702(d) (2014).

This appeal was processed using the VBMS and Virtual VA paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The Veteran does not have a skin disability that was caused by his service.



CONCLUSION OF LAW

The criteria for service connection for a skin disability have not been met. 38 U.S.C.A. § 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran asserts that he has a skin disability due to his service, more than 50 years ago. In his claim, received in September 2008, he stated that during service he spilled grease on his chest and neck, and that he currently had dry skin with itching and discomfort in those areas. During his hearing, held in July 2012 , he testified to the following: in April 1952, he was burned when grease spilled across his chest. He was treated for chest burns, but service treatment records wrongly only show a burn to his forearm. It was argued that during service he sustained "severe burns to his chest." His burns were treated ("packing me down") for six days, and he could not wear a shirt for about 30 days. 

His earliest post-service treatment for his skin symptoms was in about 1984, however, he was unable to obtain the records of this treatment. He has had ongoing itching since service, with current symptoms that include dryness and small pimples. 

In September 2008, the Veteran filed his claim. In November 2009, the RO denied the claim. The Veteran has appealed. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Regulations also provide that service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury which was incurred in or aggravated by service. 38 C.F.R. § 3.303(d) (2014). 

With chronic disease shown as such in service so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Id. When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of an evidentiary showing of continuity. Id. For this purpose, a chronic disease is one listed at 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed. Cir. 2013) (holding that the term "chronic disease in 38 C.F.R. § 3.303(b) is limited to a chronic disease listed at 38 C.F.R. § 3.309(a); and that continuity of symptomatology only relates the specified chronic diseases). A grant of service connection under 38 C.F.R. § 3.303(b) does not require proof of the medical nexus. Id.

The Veteran's service treatment records include an August 1950 entrance examination report which notes scars on the back, elbow, and hands. In April 1952, the Veteran was treated for a slight burn on the right forearm. The Veteran's separation examination report, dated in September 1952, shows that his skin was clinically evaluated as normal, except for a notation of a two-inch scar in the left scapular area. 

It is important for the Veteran to understand that the service medical records appear complete and detailed, providing evidence his claim.

As for the post-service medical evidence, it consists of VA reports, dated between 1968 and 2015. 

This evidence includes VA examination reports, dated in January 1972, which show that the Veteran complained of symptoms that included a pinched nerve in his neck "with tissues drying out." The reports are difficult to read in places, but appear to show that the Veteran was noted to have a two-inch scar at the back of his left cheek, irregularities of his skin over his right scapula and back, and pigmented scars. 

Importantly, there was no relevant diagnosis, providing more evidence against this claim. 

VA progress notes show that in October 2008, the Veteran requested "dry skin cream"; there was no diagnosis. 

In December 2013, the Veteran was afforded a VA examination. The report shows that the examiner noted that the Veteran had a diagnosis of eczema, but that he did not have a current diagnosis. The examiner concluded that the Veteran's eczema (which was not currently shown) is less likely as not caused by or a result of the burn on the forearm and left scapular scar, from the records. The examiner explained that there was no mention of a burn to the anterior chest from the records. 

In the Board's August 2014 Remand, it stated that although the December 2013 VA examiner had discussed the two in-service notations (i.e., the 1952 notation of a slight burn on the right forearm, and the notation of a two-inch scar in the left scapular area in the September 1952 separation examination report) as directed, he failed to discuss if a skin disability was related to any aspect of his military service, and he failed to take the Veteran's statements into consideration. The Board therefore requested that the December 2013 VA medical examiner provide a supplemental opinion as to whether or not any skin diagnosis is at least likely as not due to the Veteran's military service, to include a discussion of the Veteran's in-service treatment, and his statements. The Board parenthetically notes that although the Board's August 2014 Remand indicated that the Veteran had sustained a slight burn on the right forearm in January 1952, in fact, this report is dated in April 1952.

In October 2014, a supplement opinion was obtained from the December 2013 VA examiner. The examiner indicated that the Veteran's records had been reviewed. The examiner noted that the Veteran reported having problems with eczema, but that eczema was not present upon examination. The examiner stated that eczema is not caused by or a result of the Veteran's scapular scar noted in 1952, nor the burn forearm burn scar noted in 1952. 

In December 2014, the Board remanded the claim and directed that the December 2013 VA medical examiner provide a supplemental opinion as to whether or not any current skin disorder is at least as likely as not incurred or otherwise the result of the Veteran's military service. 

In March 2015, another supplement opinion was obtained from the December 2013 VA examiner. The examiner indicated that the Veteran's records had been reviewed. The examiner concluded that the Veteran's "current eczema condition is less likely than not caused by his military service." The examiner explained that in reviewing the records, the Veteran did not have any other skin conditions during service other than the burn and the scars. 

In addition, there was no indication of a skin condition when the Veteran's VA treatment began.

The Board finds that the claim must be denied. The Veteran's service treatment records show that he was noted to have scars on his back, elbow, and hands, upon entrance into service. In April 1952, he was treated for a slight burn on the right forearm. The Veteran's separation examination report, dated in September 1952, shows that his skin was clinically evaluated as normal, with the exception of a notation of a two-inch scar in the left scapular area. In summary, there is no evidence to show that the Veteran had a chronic skin disease during service. Given the foregoing, a chronic condition is not shown during service. See 38 C.F.R. § 3.303(a), (b). 

Furthermore, it is not until 2008, over 55 years following separation from service, that the Veteran is shown to have requested a cream to address dry skin symptoms; there was no associated diagnosis. In this regard, VA does not generally grant service connection for symptoms unless they are associated with chronic pathology, or diagnosed disability. See generally Savage v. Gober, 10 Vet. App. 488, 495-97 (1997) (stating that a layperson is not competent to provide evidence that the observable symptoms are manifestations of chronic pathology or diagnosed disability, unless such a relationship is one to which a lay person's observation is competent). The earliest post-service evidence of a diagnosed skin disability (eczema) is no more than "by history," and it is dated in December 2013. The existence of a current disability is the cornerstone of a claim for VA disability compensation. See Degmetich v. Brown, 104 F. 3d 1328 (1997); Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). In addition, even assuming arguendo that a current skin disability (eczema) is shown, the earliest evidence of eczema is dated about 60 years after separation from service, and there is no competent and probative opinion of record in support of the claim. The December 2013 VA opinion and two addendums weigh against the claim. 

In particular the March 2015 addendum is considered to be highly probative evidence against the claim, as it is shown to have been based on a review of the Veteran's medical records, and it is accompanied by a sufficient explanation. Neives- Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion). The Board therefore finds that the preponderance of the evidence is against the claim, and that the claim must be denied.

With regard to the appellant's own contentions, lay persons are generally presumed competent to provide opinions on some medical issues, to include skin symptoms, which are readily observable. See generally Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). However, none of the medical evidence dated between separation from service and December 2013 (i.e., for over 60 years), to include a number of reports discussing the Veteran's medical history, show that the Veteran reported a history of chest burns, skin disease, or ongoing skin symptoms since his service. AZ v. Shinseki, 731 F.3d 1303 (Fed. Cir. 2013); see also Buczynski v. Shinseki, 24 Vet. App. 221, 224 (2011) (where there is a lack of notation of medical condition or symptoms where such notation would normally be expected, the Board may consider this as evidence that the condition or symptoms did not exist). The Board finds that the Veteran's service treatment records, which are contemporaneous to his service, and the decades of post-service medical evidence (which do not show skin symptoms or a skin disability) warrant more probative value than the Veteran's recent assertions, which were made many years after separation from service. See Harvey v. Brown, 6 Vet. App. 390, 394 (1994); see also Pond v. West, 12 Vet. App. 341 (1999) (although Board must take into consideration the veteran's statements, it may consider whether self-interest may be a factor in making such statements); Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). Given the foregoing, the Board finds that the medical evidence outweighs the appellant's contentions to the effect that he has the claimed condition due to his service. Madden v. Gober, 125 F. 3d 1477, 1481 (Fed. Cir. 1997).

The Board has considered the doctrine of reasonable doubt, however, as is stated above, the preponderance of the evidence is against the appellant's claim, and the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Duties to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a).
 
Neither the Veteran nor his representative has alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009). None is found by the Board. Indeed, VA's duty to notify has been more than satisfied. The Veteran was notified via a letter, dated in November 2008, of the criteria for establishing service connection, the evidence required in this regard, and his and VA's respective duties for obtaining evidence. He also was notified of how VA determines disability ratings and effective dates if service connection is awarded. This letter accordingly addressed all notice elements. Nothing more was required. The claim was readjudicated as recently as June 2015. See supplemental statement of the case, dated in June 2015; Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as an statement of the case or supplemental statement of the case, is sufficient to cure a timing defect).

The RO also provided assistance to the appellant as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. It appears that all known and available service medical reports, and post-service records relevant to the issue on appeal have been obtained and are associated with the Veteran's claims files. The RO has obtained the Veteran's VA and non-VA medical records. In December 2013 the Social Security Administration (SSA) reported that the Veteran's records had been destroyed and were not available. The Veteran has testified that he received treatment for skin symptoms in about 1984 from "Dr. R," however, he stated that he was unable to obtain these records. In December 2008 and September 2009, the RO attempted to obtain Dr. R's records; there is no record of a response. The Veteran has been afforded an examination and an etiological opinion has been obtained. 

In August 2014, the Board remanded this claim. The Board directed that the Board's August 2013 and August 2014 remands, and the supplemental statements of the case, dated in January 2014 and November 2014, be resent to the Veteran's corrected address, as stated in a July 2014 statement from the Veteran's representative. In March 2015, the RO resent these documents to the incorrect address, and they were subsequently returned to VA by the U.S. Postal Service. However, in February 2015, VA received notice of a new address of record for the Veteran (i.e., a change from the address from that which was reported in July 2014). In May 2015, the RO resent all of the documents in issue to the Veteran's now-current address of record; there is no record to show that these documents were not delivered. The Board's remand also directed that the Veteran's claims file be forwarded to the December 2013 VA examiner in order to obtain an addendum medical opinion as to whether it is at least as likely as not that any current skin disorder was incurred in, or is otherwise the result of, his military service. In March 2015, a supplemental opinion was obtained that is in conformance with the Board's instructions. 

Under the circumstances, the Board finds that there has been substantial compliance with its remand. See Dyment v. West, 13 Vet. App. 141, 146-147 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran are to be avoided).

In July 2012, the Veteran was provided an opportunity to set forth his contentions during a hearing before a Decision Review Officer (DRO). In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the U.S. Court of Appeals for Veterans Claims recently held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

Here, during the July 2012 hearing, the DRO identified the issue on appeal. Also, information was solicited regarding the etiology of the disability in issue, and the sources of his treatment. Therefore, not only was the issue "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim" were also fully explained. See Bryant, 23 Vet. App. at 497. As such, the Board finds that, consistent with Bryant, the DRO complied with the duties set forth in 38 C.F.R. 3.103(c)(2), and that the Board may proceed to adjudicate the claim based on the current record.

Based on the foregoing, the Board finds that the Veteran has not been prejudiced by a failure of VA in its duty to assist, and that any violation of the duty to assist could be no more than harmless error. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004).

ORDER

Service connection for a skin disability is denied.


____________________________________________
JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs